SEP 27 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DAVID B. VERRET and THERESA B. VERRET | : | DOCKET NO. 2:09 CV 02017 |
| VS. | : | JUDGE MINALDI |
| LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY and LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment, filed by the defendant Louisiana Farm Bureau Casualty Insurance Company ("Louisiana Farm Bureau") [doc. 13]. The plaintiffs, David B. and Theresa B. Verret ("the Verrets") filed an Opposition [doc. 17].

## FACTS

This case concerns a dispute over a request for additional money under an insurance policy for property damaged in 2008 by Hurricane Ike. The Verrets own the property. Louisiana Farm Bureau as a "Write Your Own" ("WYO") program carrier with the federally funded National Flood Insurance Program ("NFIP") issued a Standard Flood Insurance Policy ("SFIP") on the property. The SFIP coverage included $250,000 for the structure and $100,000 for contents of the property.[1]

Congress created the NFIP to provide insurance coverage at or below actuarial rates. *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). The Federal Emergency Management Agency ("FEMA") operates the NFIP, and the program is supported by the federal treasury. *Id.*

---

[1] Def.'s Statement of Undisputed Facts ¶ 1

1

The NFIP grants FEMA the power to issue SFIPs directly or through WYO companies. *Id.* FEMA provides regulations to determine "which federal flood insurance funds may be disbursed to eligible policy holders," and sets the terms and conditions of these policies. *Id.*; 44 C.F.R. § 61, app. (A)(1), art. VII.R. Pursuant to federal statute, WYO insurance companies are fiscal agents of the United States. 42 U.S.C. § 4071(a)(1).

In September 2008, Hurricane Ike damaged the Verrets' property in Sulphur, Louisiana. Louisiana Farm Bureau hired an independent claims adjuster, Renee Romero, to assess and quantify the damages. Ms. Romero hired Project Time & Cost Forensic Consulting Services ("Project Time") to inspect the property. In its initial report, Project Time noted that a portion of the foundation damages pre-existed Hurricane Ike but found that Hurricane Ike "exacerbated" some of the pre-existing damages.[2]

Because of the pre-existing damage, Louisiana Farm Bureau requested a second inspection from Project Time in order to clarify and quantify the amount of damages caused by Hurricane Ike. In its second report, Project Time determined that the amount of foundation movement resulting from erosion caused by Hurricane Ike "would be negligible." According to Ms. Romero and based on Project Time's inspection, long-term settlement, not Hurricane Ike, caused the foundation movement.[3] On November 24, 2008, Louisiana Farm Bureau, through Ms. Romero, presented a Proof of Loss to the Verrets for $3,007.05. The Proof of Loss denied

---

[2] *Id.* at ¶ 4 & 5; Pl.'s Statement of Material Facts ¶s 1 & 5.

[3] Def.'s Statement of Undisputed Facts ¶s 4 & 5; Pl.'s Statement of Material Facts ¶ 6.

claims for foundation movement. The plaintiffs signed the Proof of Loss and accepted the sum paid.[4]

After an apparently time consuming process to appeal the initial claim, FEMA denied coverage for the settlement movement and resulting foundational damages in a letter dated February 27, 2009.[5] Again, the Verrets appealed. After providing the additional information requested by FEMA, including an itemized settlement worksheet and an itemized estimate from a licensed contractor, FEMA apparently agreed to provide an additional $2,599.79 for "Home Repair" based on the appeal. There is a question as to whether the Verrets received that amount, which is not in dispute in the present lawsuit.[6]

Based on the correspondences between FEMA and the Verrets, it is unclear what exactly happened after FEMA rendered its decision concerning the Verrets' appeal.[7] What is clear is that the Verrets continuously sought additional money for foundation damages, and FEMA eventually instructed Louisiana Farm Bureau to inspect the property again.[8] Louisiana Farm Bureau hired independent claims adjuster John Munnerlyn to review the potential settlement

---

[4] Def.'s Statement of Undisputed Facts ¶ 5; Pl.'s Ex. C-3.

[5] See Pl.'s Br. Summ. J. 2-4.

[6] See id. at 3 (requiring certain information, including an engineering report, in letter dated February 24, 2009 but postmarked April 1, 2009, after receiving letter advising Verrets of an additional $2,599.79 on April 1, 2009); see also Pl.'s Ex. C-10 & C-11; Pl.'s Statement of Material Facts ¶ 28 ("to date, Farm Bureau has only paid a total of $14,754.99").

[7] The Verrets provided engineering reports through the months of April and May 2009, but it is unclear, based on FEMA's April 1, 2009 appeal decision, whether another inspection would occur or why FEMA requested the Verrets' engineering reports. Pl.'s Br. Summ. J. 3-4; Pl.'s Statement of Material Facts ¶s 15, 16, & 17.

[8] Def.'s Statement of Undisputed Facts ¶ 6; Pl.'s Statement of Material Facts ¶ 18 – 20.

damages. Based on that inspection, Mr. Munnerlyn prepared a supplemental claim report. The report included adjustments to add fill to the foundation under the deck of the property, the site of the foundation damage. The adjuster issued an additional claim for $11,407.34, and he provided a proof of loss in that amount for the Verrets to sign.[9]

Dissatisfied with the claim amount, the Verrets contacted David Reed from Farm Bureau, who allegedly assured them that he had requested a National Flood Insurance adjuster to review their claim; however, he also allegedly noted that National Flood Insurance did not provide a firm date for that review.[10] According to the Verrets, Mr. Reed instructed them to sign and return the Proof of Loss submitted by John Munnerlyn, and allegedly assured them that additional costs would be paid upon their presentation of supporting documentation.[11] Based on Mr. Reed's assurance, the Verrets claim that they signed the supplemental proof of loss for $11,407.34 on September 10, 2009, and they accepted a check from Louisiana Farm Bureau for that amount.[12]

The next day, the Verrets filed suit in state court alleging breach of contract and various state law claims.[13] Louisiana Farm Bureau removed the case to federal court, as required under federal regulation. The Verrets "admittedly did not file a proof of loss for the amounts claimed

---

[9] Def.'s Statement of Undisputed Facts ¶ 6; Pl.'s Statement of Material Facts ¶ 20.

[10] Pl.'s Statement of Material Facts ¶ 24

[11] *Id.* at ¶ 25.

[12] *Id.* at ¶ 26.

[13] Pl.'s Comp. ¶ 2.

in this lawsuit."[14] The failure to file the proof of loss is the crux of this summary judgment motion.[15]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[14] Pl.'s Br. Summ. J. 9; Hagey Summ. J. Aff. ¶ 21.

[15] Though the defendant also alleges that the plaintiffs failure to file the suit in federal court is grounds for dismissal, for the reasons stated in this memorandum ruling, that issue is moot.

574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## LAW AND ANALYSIS

It is undisputed that the Verrets failed file a formal proof of loss statement for the amounts sought in this lawsuit. Louisiana Farm Bureau first seeks dismissal of the suit because of the Verrets' failure, in part, to provide a sworn proof of loss for the amounts claimed in this suit.[16] The Verrets assert, however, that the sworn proof of loss requirement should not apply in this case, in part, because the requirement would result in an absurdity and injustice. Specifically, the Verrets claim that an injustice will result from this requirement "because they did not have proof of that loss at the time they filed this lawsuit and did not want to commit perjury on a federal form."[17] Due to the prescription period, the Verrets were placed in the "unspeakable position of choosing between . . . perjury . . . or losing their rights to prescription."[18]

According to regulation, no provision of an SFIP may be altered, varied, or waived without the express written consent of the Federal Insurance Administrator. 44 C.F.R. § 61, app. A(2), art VII.D. Under the NFIP, an insured cannot file a lawsuit seeking further federal benefits under the policy unless the insured can show prior compliance with all policy requirements. 44 C.F.R. § 61, app. (A)(1), art VII.R. The pertinent federal regulation states, in relevant part:

---

[16] Def.'s Br. Summ. J. xiv – xv.

[17] Pl.'s Br. Summ. J. 5 – 9.

[18] *Id.* at 9.

6

> Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed *and sworn* to by you, and which furnishes us with the following information:
> a. The date and time of loss;
> b. A brief explanation of how the loss happened;
> c. Your interest (for example, "owner") and the interest, if any, of other s in the damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in titled or occupancy of the covered property during the term of the policy;
> f. Specifications of damaged building and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; . . .

44 C.F.R. § 61, app. A(1), art. VII(J)(4) (emphasis added). While the regulations provide a 60 day time frame, the Federal Insurance Administrator extended this requirement to 330 days for damage claims from Hurricane Ike.

Compliance with all of the policy's requirements is necessary to file a lawsuit seeking further federal benefits under the SFIP. *Marseilles Homeowners Condominium Assoc., Inc. v. Fidelity Nat'l. Ins. Co.*, 542 F.3d 1053, 1056. Failure to provide a complete, sworn proof of loss statement relieves the federal insurer's obligation to pay what otherwise might be a valid claim. *Id.*; *Gowland v. Aetna*, 143 F. 3d 951, 954 (5th Cir. 1998). This is a strict and often draconian requirement. *See, e.g., Santangelo v. State Farm Fire & Cas. Ins. Co.*, 2007 WL 1655549, at *5 (E.D.La. June 6, 2007) (denying plaintiffs' claims under SFIP because the insurer did not actually receive the policy renewal check within 30 days as required under SFIP even though plaintiffs mailed policy renewal check within 30 days of policy expiration).

In *Gowland v. Aetna*, for instance, the insured provided notice of loss through their agent but failed to file a formal proof of loss. 143 F.3d at 954. The Fifth Circuit affirmed the district court's summary judgment ruling in favor of the insurance company. *Id.* The court stated that

7

"it is clear that giving notice of loss and providing a sworn [proof of loss] statement are separate and distinct requirements of the policy." *Id.* A policy holder seeking further federal funds must satisfy the proof of loss requirement to file suit in federal court. *Id.* According to the court, the proof of loss requirement must be "strictly construed and enforced." *Id.*

Similarly, in *Zitler v. National Flood Insurance Program*, the plaintiff sued under an SFIP issued by FEMA, seeking additional payment under the policy. 2009 WL 537644 (E.D.La. Mar. 2, 2009). The plaintiff, however, had not filed a proof of loss. *Id.* The court held that the one-year extension to file the proof of loss was a hard and fast rule requiring strict compliance. *Id.* Any alleged dealing and correspondence with FEMA leading up the plaintiff's suit was irrelevant. *Id.*

Because the sworn proof of loss is mandatory, it may not be waived by anyone other than the Federal Insurance Administrator. *See Richardson v. American Bankers Ins. Co.*, 279 Fed. Appx. 295, 298 (5th Cir. 2008). In *Richardson v. American Bankers Ins. Co.*, for instance, the plaintiff filed a claim pursuant to his SFIP and received $16,125.50 for Hurricane Katrina related damages to his property. *Id.* at 295. The plaintiff sought additional benefits. *Id.* While he provided invoices and estimates, he never submitted a sworn proof of loss. *Id.* The insurance company denied his coverage. *Id.* Even though Richardson contended that the insurance company's lawyer assured him that "proof of loss was not and would not be an issue in this lawsuit," the district court granted summary judgment solely because Richardson failed to submit a sworn proof of loss. *Id.* The Fifth Circuit affirmed the district court's summary judgment ruling. *Id.* After describing the sworn proof of loss requirement as a "strict" requirement, the Fifth Circuit reasoned that "Richardson's position is contrary to federal statutory law, the Administrator's Waiver, and our precedent." *Id.* at 298. The Fifth Circuit held

8

that the insured must "show prior compliance with *all* of the policy's requirements, including the [proof of loss] requirement," before filing a lawsuit seeking further federal benefits under an SFIP. *Id.*

Even substantial compliance is insufficient to satisfy the proof of loss requirement. *Marseilles Homeowners Condominium Assoc., Inc. v. Fid. Nat'l. Insurance Co.*, 542 F.3d 1053, 1057 (5th Cir. 2008). In *Marseilles Homeowners Condominium Association, Inc. v. Fidelity National Insurance Co.*, the plaintiff, in requesting additional sums for flood damages, submitted further information to its insurance company, the defendant. 542 F.3d 1053, 1056 (5th Cir. 2008). After the defendant denied coverage of the additional claim, the plaintiff filed suit in district court. *Id.* The court affirmed the district court's grant of summary judgment in favor of the defendant. *Id.* In rejecting the plaintiff's assertion that the submitted information substantially complied with the Proof of Loss requirement, the court held that "strict adherence is required to all terms of the SFIP." *Id.* at 1057. Absolute adherence to the sworn Proof of loss requirement is required for an insured to bring a lawsuit seeking further federal benefits. *Id.*

The Verrets claim, however, that Louisiana Farm Bureaus' egregious conduct precludes it from obtaining summary judgment based on the Verrets' failure to submit a proof of loss. The doctrine of estoppel should preclude Louisiana Farm Bureau from asserting this defense.[19] "[T]he Supreme Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds." *Marseilles*, 542 F.3d at 1056 (5th Cir. 2008) (citing *Richardson*, 279 Fed. Appx. at 299). In fact, "the doctrine of equitable estoppel is unavailable in a claim by

---

[19] Based on a reading of the Verrets' Opposition, they ostensibly assert that they relied on statements from Louisiana Farm Bureau, including its agents, and FEMA. They further argue that the documents they supplied substantially comply with the formal proof of loss required by federal regulation. *Id.* at 9. Those issues have been discussed, *infra*.

an insured against a WYO carrier asserting a proof of loss defense." *See, e.g., Richardson*, 279 Fed. Appx. at 299. As the Fifth Circuit reasoned in *Wright v. Allstate Insurance Co.*, "[w]hen federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution." 415 F.3d 384, 387 (5th Cir. 2005) (quoting *Gowland*, 143 F.3d at 955).

Overall, the Fifth Circuit has clearly held that a plaintiff seeking federal funds under an SFIP must strictly adhere to the requirements of FEMA regulation. *See Marseilles*, 138 F.3d at 545. "Where federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." *Wright*, 415 F.3d at 388 (citing *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984) ("Protection of the public fisc requires that those who seek public fund act with scrupulous regard for the requirement of law. . . . [T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law.")). "Anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Id.* (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)); *see also Tucard, LLC v. Fid. Nat. Prop. & Cas. Ins. Co.*, 567 F. Supp. 2d 215, 222 (D.Mass. 2008) ("Such an austere treatment of the claims by those who claim ignorance of or mistake regarding the specifics of a federally regulated program is well established.") (denying claim under SFIP due to plaintiff's mistaken inclusion of incorrect address on policy application).

Here, the only relevant issue is whether the Verrets filed a timely, sworn proof of loss for the sums requested in the lawsuit. They admittedly did not provide a sworn proof of loss for the additional sums sought; thus, they did not meet the strict requirements to file a lawsuit to obtain

further federal benefits under the SFIP. As a result, Louisiana Farm Bureau is entitled to summary judgment for the contractual claims under the SFIP.

Second, Louisiana Farm Bureau argues that federal law preempts all extra-contractual state law claims against WYO carriers.[20] The Verrets, however, make no arguments challenging Louisiana Farm Bureau's assertion that federal law preempts the Verrets' state law claims. The Fifth Circuit has clearly held that "state law tort claims arising from claims handling by a WYO are preempted by federal law." *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341 (5th Cir. 2005). Indeed, federal law preempts all extra-contractual state law claims. *Id.* Thus, Louisiana Farm Bureau is entitled to summary judgment with respect to the Verrets' extra-contractual state law claims.

Finally, whether or not Louisiana Farm Bureau's argument is ultimately prevailing, the Verrets assert that this Court should grant them a waiver of the proof of loss requirement. In the alternative, the Verrets claim that there is at least a fact question over the Verrets' entitlement to a wavier in this case.[21] The plaintiffs cite *Moffet v. Computer Sciences Corp.*, 647 F. Supp. 2d 517 (D.Md. 2009) and 5 U.S.C. § 702 in support for their argument that this Court may grant the Verrets a waiver after they have already filed suit. In addition, the Verrets request leave of court to file a waiver.[22]

The regulations, however, specify that the Federal Insurance Administrator is the only person authorized to waive the proof of loss deadline. 44 C.F.R. § 61.13(d). While the court's

---

[20] Def.'s Br. Summ. J. xvii.

[21] *Id.* at 10.

[22] *Id.* at 11.

11

holding in *Moffet* does support the assertion that district courts possess the authority to review agency decisions, that case is neither binding on this Court nor relevant to the issue here. 647 F. Supp. 2d at 521. In *Moffet*, FEMA, not the WYO insurance policy carrier, was the defendant. *Id.* Furthermore, it was FEMA's actions that the court reviewed, and the court only reviewed those actions after FEMA, through the Federal Insurance Administrator, denied the plaintiffs' waiver request. *Id.* No statute, regulation, or case law provides support for a district court to unilaterally grant an extension to file a proof of loss in a suit against a WYO for breach of contract. The court is without authority to grant the Verrets an extension to submit a proof of loss.

In addition, the circumstances under which the court in *Moffet* granted the plaintiffs leave to file individual requests for waiver of the proof of loss deadline is not relevant here. *Id.* at 520. In *Moffet*, the court noted that it previously granted leave to the plaintiffs who missed the waiver deadline. *Id.* The court mentioned that leave was appropriate because "it felt that [FEMA's] criteria for waiver were potentially invalid as to pending claims in that they were not previously announced." *Id.* Leave of court to file a waiver, however, was contingent upon the court later invalidating the criteria for the defendant to review a waiver request. *Id.* The relevant defendant, FEMA, set the terms of the waiver criteria, and had the direct authority to grant a waiver to the plaintiffs. *See id.*

There is no assertion that the criteria to grant a waiver request is invalid, and Louisiana Farm Bureau has no authority to set the standards for reviewing a waiver request much less grant an extension, unlike the defendant in *Moffet*. *Id.* Ultimately, the regulations required the Verrets to seek a waiver of the proof of loss deadline before filing suit. They claim that they did not possess the required proof of loss for claims requested in this lawsuit. Yet, they possessed at

12

least two different engineering reports that contained estimates for the money they sought as of May 28, 2009, well within the proof of loss deadline.[23] Moreover, the Verrets should have pursued a waiver from FEMA before they filed suit against Louisiana Farm Bureau. Granting the Verrets leave to file a waiver request over one year after they filed suit would prejudice Louisiana Farm Bureau; thus, the Verrets' request is denied.

IT IS ORDERED that Louisiana Farm Bureau's Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that the Verrets' request for leave of court to file a waiver of the proof of loss deadline is DENIED.

IT IS FURTHER ORDERED that all claims against Louisiana Farm Bureau are hereby DISMISSED with prejudice at the plaintiffs' cost.

Lake Charles, Louisiana, this 16 day of September 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[23] Pl.'s Br. Summ. J. 3; Pl.'s Statement of Material Facts ¶ 17.